UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| IN RE: JUNE LAURIE ROUNTREE ) <br> Debtor ) <br> ) <br> JUNE LAURIE ROUNTREE, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> PAMELA NUNNERY ) <br> ) <br> and ) <br> ) <br> PAUL KLEIN, ESQ., ) <br> ) <br> Defendants. ) <br> ) | **Case No. 01-21480-SCS** <br> **Chapter 7** <br><br> **APN No. 09-07057-SCS** |

## MEMORANDUM IN OPPOSITION

Defendants, in opposition to the motion of the Plaintiff for summary judgment, wish to make the following points:

### I. THE PLAINTIFF'S BURDEN ON THIS MOTION FOR SUMMARY JUDGMENT IS VIRTUALLY IMPOSSIBLE FOR THEM TO MEET.

The burden of a movant for summary judgment is to demonstrate, as the moving brief suggests, the absence of genuine issues of fact, and it is generally accepted that a movant having the burden of proof has a tougher burden than one who is defending a suit.

Ironically, earlier in this case, when the Defendants moved for summary judgment, Plaintiff presented no written opposition, cited no cases, and came to Court merely to state that there were issues of fact such as when the transfer took place. The Court accepted the argument of Plaintiff's counsel, who has now taken the opposite position, but the Court's Order disposing

{89172/W0050641.1}

- 1 -

of the earlier motion for summary judgment clearly finds genuine issues of material fact, and they have not disappeared since the Court's finding.

Recently, when the Defendant laid bare its evidence demonstrating the utter fraud of the Plaintiff, Plaintiff reversed her position which had been to the effect that the transfers occurred in 1998, well before the Petition was filed, and has stated that because of a legal fiction, the transfers did not occur until the deeds were recorded in 2002, after the discharge.

While more detail will be devoted to this particular facet of the motion hereinafter, suffice it to say that the Plaintiff attempted, in order to better her legal position, to suggest that at the time she filed for bankruptcy she did not own the Currituck property or, for that matter, the Virginia Beach property that she resides in, and now is claiming that she apparently owned both until 2002 when her bankruptcy case was almost over.

A Plaintiff who claims that one of two versions of facts she has alledged in court is the correct one, and the other one needs to be ignored, faces a burden at least on the issue of credibility, which should not be decided on a motion for summary judgment.  She is also barred by the doctrine of judicial estoppel from reversing her position.

By failing to include the Currituck property in her list of assets at the time she filed her Petition in 2001, she was essentially informing the Court, albeit fraudulently in our opinion, that she did not own that any longer.  Thus, it was a pre-Petition transfer which even she agrees can be sued upon.  She made a similar assertion with respect to her residence, indicating that she did not own the property except in name only, yet she conveyed the property in 2002 to her father.

In announcing its decision from the bench on the earlier summary judgment motion, the Court specifically cited the issue of fact as to the date of transfer as precluding the entry of judgment summarily.

## II. QUESTIONS OF FACT EXIST HEREIN IN ABUNDANCE, PRECLUDING SUMMARY JUDGMENT.

While we have no sworn testimony from the Plaintiff herein to suggest the date of transfer, her father, who was deposed in the fraudulent conveyance action, stated under oath that the deeds were delivered to him in approximately 1999. (See attached Exhibit "A") As a party to that action, Ms. Rountree is bound by that testimony which is uncontradicted therein.

While the revision date on the deed form itself indicates that it was not signed before June of 2000, we remind the Court that it was not until 2001 that the Petition was filed, so a pre-Petition signing is still a possibility.

## III. THE TIMING OF THE FRAUDULENT TRANSFERS IS AN ISSUE TO BE TRIED.

The timing of the fraudulent transfer is an issue that has been misconstrued by Plaintiff's counsel. While it is true that several of the cases that Plaintiff's counsel has cited indicate the viability of a claim in fraudulent conveyance where a previously discharged debtor is involved, it is asserted that in all of those cases the fraud occurred pre-Petition. As stated above, we do not know the date of the fraud in this matter and inasmuch as the Court is bound to interpret all contested issues in the light most favorable to the non-movant, the conclusion that the transfers were post-Petition need not be made on this motion.

Moreover, the Plaintiff has not cited one case that would suggest that post-Petition fraudulent transfers cannot be sued upon. This would be a ridiculous proposition, since "post-Petition" could be defined as anything that happens from the date of the Petition until the end of time. Surely, if this is held to be an otherwise fraudulent conveyance made after the Bankruptcy

                       Document      Page 4 of 11

Court had granted a discharge, the discharge would not provide immunity for the future misconduct of the debtor through the end of time.

In this case, there was an adversary proceeding that was going on at the time the bankruptcy was filed and in the first instance it was brought before this Court, and the Court abstained, sending the case back to the courts of the State of North Carolina, since the issue involved was quite novel.

It was clear that there would be no fixed debt, therefore no judgment for a specific amount, therefore no opportunity to challenge a transfer as fraudulent, until some time after the filing of the bankruptcy case. It is not surprising, inasmuch as the general form discharge that was issued in this case was issued during the pendency and prior to the trial of the Superior Court of Gaston County action, that the discharge would occur before the Plaintiff would be motivated by a specific judgment to deplete her assets fraudulently. If all that a debtor has to do in order to avoid fraudulent conveyance liability is to file bankruptcy and obtain a discharge, and then has a lifetime "get out of jail free" card with respect to subsequent transfers, one can see how the bankruptcy system could be abused.

Thus, not only is it impossible for this Court to ignore a question of fact as to when the transfer took place, it is also inappropriate for this Court to give the Plaintiff in this case the benefit of her own misdeeds, for taking liberties with the truth regarding her ownership of the property and then issuing a Deed with a backdated signature so as to defraud the Court and her creditors as to whether that property could be used to pay a judgment rendered against her or at least that dividend that the creditor would get in the bankruptcy.

As a recipient of over 90% of the bankrupt's assets, the difference between the Currituck Property being removed from the estate fraudulently and it not being removed from the estate fraudulently was a major one in the outcome for the Defendant Nunnery.

To summarize this point, the Bankruptcy Act requires the listing of debts, the listing of creditors, and that each be done honestly. Even if this were a pre-Petition transfer, the evidence of which was held back for four years, the debt to the Plaintiff based upon the fraud was not listed in the schedules. The Defendant Nunnery made no claim against this particular transfer in her Proof of Claim because she was unaware of it and there was no way she could have been aware of it.

## IV. THE INTERPRETATION OF THE UNIFORM FRAUDULENT TRANSFER ACT, AS IT AFFECTS NORTH CAROLINA LAW, IS BEST LEFT TO THE COURTS OF STATE OF NORTH CAROLINA.

Ironically, the Plaintiff's attorney herein (Brief p. 7) criticized state courts that "attempt to analyze 11 U.S.C. §524" which, counsel stated "...was certainly not within its qualifications, expertise or jurisdiction." Just as this Court held, in granting a motion to abstain, that the invasion of privacy laws of the courts of the State of North Carolina are best interpreted by the State of North Carolina, it is respectfully requested that this Court allow the courts of the State of North Carolina to, in a case of first impression for it, interpret the Uniform Fraudulent Transfer Act in its own way.

(The attempt to suggest that North Carolina has engaged in some interpretation of the Uniform Fraudulent Transfer Act (hereinafter "U.F.T.A.") by citing a decision of the North Carolina Business Court, a *nisi prius* Court whose unofficial reported decisions have no effect upon anything beyond the case they decide even in North Carolina, does not meet this obligation.

The Lexis citation was unavailable to the undersigned inasmuch as we can only find this on Westlaw. We found two 2007 opinions, both of them cited the U.F.T.A. but one was on a motion to compel and the other was on motion to dismiss causes of action other than under the U.F.T.A. claim. There was no precedential effect to either decision, which in the cited language only reiterated verbatim portions of the U.F.T.A.)

This Court has before it some bankruptcy and some non-bankruptcy issues, but it is simply wrong that the Plaintiff has brought on here a motion for summary judgment on the U.F.T.A. claims. Those are not before this Court, nor is any state law issue. The only issue before this Court is whether the bankruptcy discharge which precluded further proceedings of this nature and, as will be analyzed below, Plaintiff has failed totally to support that proposition with citations.

## V.  PLAINTIFF HAS CITED NO CONTROLLING CASE LAW TO SUPPORT HER POSITION.

The precedent cited by Plaintiff does not meet the issue at hand. Plaintiff's counsel has not cited one case interpreting the U.F.T.A. so as to bar a claim against a debtor based on fraudulent transfer, once that debtor has been discharged in bankruptcy. That was clearly the issue presented by the U.F.T.A. case and clearly the burden of the Plaintiff to demonstrate.

While the Plaintiff has taken words and soundbites and indicated definitions that might support an argument when those terms are put together in a contrived context, not only has she failed to prove the proposition which underlies this adversary proceeding, but she has in fact proved that one of the components of the relief sought – dismissing the claim as to the transferees – is totally without merit. Cases cited by Plaintiff's counsel have stood for the proposition that transferees do not get any benefit of a debtor's discharge in bankruptcy

Case 09-07057-SCS  Doc 49  Filed 10/21/10  Entered 10/21/10 14:38:15  Desc Main
Document      Page 7 of 11

following a fraudulent transfer, pre-Petition or post-Petition, thus, the relief sought on behalf of the DeWolf's in this proceeding is totally without merit.[1]

The cases that are cited to have supported the case at bar are inapposite to the proposition being advanced herein. In *Johner v. Jacob*, 515 NW2d 183 (N.D. 1994) there was no bankruptcy involved whatsoever. In *Jorden v. Ball*, 357 Mass 468, 258 NE2d 736 (1970) there was also no bankruptcy issue, and the only question was whether a Plaintiff had standing to sue under a fraudulent conveyance claim (prior to the U.F.T.A. being adopted) though she had no claim at all until after the transfer had occurred. *Laidley v. Heigho*, 326 F2d 592, (9th Circuit 1963), *State of Rio de Janeiro v. E. H. Rawlins & Sons, Inc.*, 299 NY 363, 87 NE2d 299 (NY 1949) and *Remington-Rand, Inc. v. Emory University*, 185 Ga 571, 196 SE 58 (Georgia 1938) all interpreted the law as it existed decades before the adoption of the U.F.T.A. that is at issue here.

Interestingly, Plaintiff criticizes Defendants' citation of intermediate-level courts' opinions, yet has cited to the Court the decision of the North Carolina Business Court, a trial-level court, that did not analyze the issues relevant to the effect of a bankruptcy discharge on a fraudulent conveyance action. She engaged in toying with semantics such as whether a new claim was created by U.F.T.A. or whether it is a claim that can be used only against one who is desperate enough to give away his land but is not desperate enough to file bankruptcy, but questions are raised if we carry Plaintiff's arguments out to their ultimate conclusion. We query:

- Is the Plaintiff, or those who do what she did, not accountable to anyone for it?
- Is the Defendant required to forego her entitlement to punitive damages under U.F.T.A. (an entitlement which has already been determined in the state court action herein – See Exhibit "B")?

---

[1] The DeWolf's are not parties to this case, have no representation in this case and have no standing to be heard.

- If the transferees are subject to compensatory and punitive damages exposure for their passive wrongdoing, why isn't the transferor?

- Why is so much significance being given to the date of a routine discharge issued on a pro forma basis?

- Once a debtor hides property from a trustee and bankruptcy court, is she then entitled to legally hide it from her major creditor?

None of the cases cited by Plaintiff's counsel supports the novel proposition urged by the debtor – that with a discharge in bankruptcy the creditor is no longer a creditor as viewed by the fraudulent transfer statute. In fact, the only case that comments on this is *National Union Fire Insurance Company of Pittsburgh, PA v. Grusky*, 7063 So.2d 1206 (Florida 2000) wherein the last sentence says: "Under the definition set forth in the statute, (Plaintiff) was a creditor for purposes of an action predicated on (Florida's U.F.T.A. provisions)."

The interpretation of U.F.T.A. varies from state to state, and it is by no means a foregone conclusion that the quotations from selected states regarding the nature of the U.F.T.A. as not creating any new basis for liability would be adopted in North Carolina. In some states, e.g. California, (*Filip v. Bucurenciu*, 129 Cal.App. 4th 825 (3rd District 2005)) a fraudulent conveyance is viewed as an independent tort. Were it not an independent basis for relief, it would not have been supportive of a claim for punitive damages as was held in this case. Three other states hold that punitive damages are available in such a claim. As of 2004, (see *D.F.S. Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, 384 F3d 338 (7th Circuit, 2004)), Utah, Missouri and Ohio allowed punitive damages in fraudulent conveyance actions, indicating that they are not merely another collection instrumentality but constitute a basis for substantive liability. The aforecited opinion deferred to the courts of the State of Indiana to see

if Indiana would adopt that same rule, and a response to that effect was made by the Indiana Supreme Court.

At the very least, the Court should conclude that the issue of whether a bankruptcy discharge forecloses liability under fraudulent conveyance for June Laurie Rountree is an open issue, and was not so settled that any attempt to enforce such liability in the proper forum should result in any liability on the part of either of the Defendants.

## VI. PLAINTIFF'S FRAUD SHOULD PRECLUDE HER FROM OBTAINING RELIEF.

Plaintiff's fraud in this case was asserted as an affirmative defense to re-opening the case and the issuance of an injunction. See Answer to Adversary Complaint, p. 6. Her fraud is manifest in the following:

    1.    **The Currituck property**. The Currituck property was not listed among her assets in her schedules, and, not by sheer convenience, did not officially appear to be acknowledged to be hers until after the six-figure judgment had been rendered against Plaintiff. Then, by no mere coincidence, it appeared and was disposed of immediately. Sworn testimony from her father confirms this claim. That it was conveyed in 1998, as the document would suggest, is belied by the terms of the document itself and the data that is on the notarial portion of the document. These unabashed misrepresentations to the Court regarding her ownership of property, suggesting that her assets were nominal when in fact they included a parcel of property that sold just over a year later for

$60,000.00, and a single-family home, suggests her propensity toward fraud.

2. **The Virginia Beach property**. The Virginia Beach residence of the Plaintiff was listed as being hers in name only, yet she held onto its title until well after the discharge. In his testimony, her father disclosed that the Virginia Beach property was given to him by his daughter in 1998 for no legitimate consideration. The date of the gift is established by Deed as being in 2002, months beyond the discharge.

This the 21st day of October, 2010.

> s/Paul I. Klein
> Paul I. Klein NC State Bar No. 18636
> 7257 Pineville-Matthews Road
> Suite 2100
> Charlotte, NC 28226
> (704) 442-1010
> (704) 442-1020 (facsimile)
> E-mail: paulklein@kleinfreeman.com
>
>
> s/John Edwin Bedi
> John Edwin Bedi VA State Bar No. 28718
> Lake Center I
> 501 Independence Pkwy., Suite 102
> Chesapeake, VA  23220
> (757) 497-9075
> (757) 671-1682 (facsimile)
> E-mail: john@bedilaw.com
> *Attorneys for Defendants.*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 21, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

          brown@wolriv.com
          *Counsel for June Laurie Rountree*

          john@bedilaw.com
          *Co-Counsel for Defendants*

And by deposit of such copy enclosed in a postpaid envelope, in an official depository under the exclusive care and custody of the United States Postal Service, addressed as follows:

          **VIA OVERNIGHT MAIL**
          Honorable Stephen C. St. John
          U.S. B.C. Eastern District of Virginia
          600 Granby Street
          Room 400
          Norfolk, VA  23510

          **VIA FIRST CLASS MAIL**
          Barry W. Spear
          P.O. Box 6942
          Williamsburg, VA  23188
          *Trustee*

      Dated:  October 21, 2010

                                      s/Paul I. Klein
                                      Paul I. Klein Bar Number: 18636
                                      Attorney for Plaintiff
                                      7257 Pineville-Matthews Road
                                      Suite 2100
                                      Charlotte, NC  28226
                                      Telephone:  (704) 442-1010
                                      Fax:  (704) 442-1020
                                      E-mail: paulklein@kleinfreeman.com